UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

C&C INVESTMENT PROPERTIES, LLC
and GLEN L. COLLINS                                         PLAINTIFFS/COUNTER-DEFENDANTS

v.                                                          CIVIL ACTION NO.: 3:12-cv-57-DPJ-FKB

TRUSTMARK NATIONAL BANK                                     DEFENDANT/COUNTER-
                                                            PLAINTIFF

v.

CHARLOTTE D. COLLINS                                        THIRD-PARTY DEFENDANT

ORDER

This breach-of-contract and fraudulent-inducement action is before the Court on Defendant/Counter-Plaintiff Trustmark National Bank's ("Trustmark") Motion for Summary Judgment [127]. The Court, having considered the issues and the parties' submissions in light of the applicable standards, finds that Trustmark's motion should be granted.

I.      Facts and Procedural History

Plaintiff/Counter-Defendant Glen C. Collins ("Mr. Collins") and Third-Party Defendant Charlotte D. Collins ("Mrs. Collins") formed Plaintiff/Counter-Defendant C&C Investment Properties, LLC ("C&C") in 2004. C&C is an investment company that "buy[s], rent[s,] and flip[s] . . . real estate." C&C Dep. [127-1] at 7. Between 2006 and 2009, C&C executed ten promissory notes payable to Heritage Banking Group ("Heritage"), secured by Deeds of Trust encumbering properties C&C purchased from Heritage. In connection with the ten transactions, Mr. and Mrs. Collins guaranteed the indebtedness pursuant to guaranty agreements.

With respect to nine of these transactions, Plaintiffs allege that they had an agreement—though not a written contract—with Heritage whereby Heritage would sell the

properties to C&C for an appraised amount at or near the price Heritage purchased the properties for at foreclosure.  Plaintiffs allege that Heritage represented these prices to be at or below the fair market values of the properties.  Plaintiffs further allege Heritage agreed that, after Plaintiffs renovated the properties, Heritage would refinance the loans to account for the increased value. *See* 2d Am. Compl. [15] ¶ 18.  According to Plaintiffs, at some point they discovered Heritage had misrepresented the original appraisals, which were actually higher than the amounts Heritage had paid at foreclosure and were not representative of the pre- or post-renovation value of the properties.  *Id.* ¶ 19.

  C&C and the Collinses ultimately defaulted on the notes and guaranties, and Heritage, through a substitute trustee, foreclosed on the properties.  Heritage purchased all ten of the properties at the separate foreclosure sales for amounts less than the outstanding principal owed on each of the loans.

  Aggrieved by Heritage's alleged misconduct with regard to the appraisals and its alleged refusal to refinance the loans, Plaintiffs sued Heritage in Hinds County Circuit Court on November 12, 2010.  Shortly thereafter, on April 15, 2011, the Chancery Court of Leake County, Mississippi, declared Heritage insolvent and appointed the Federal Deposit Insurance Corporation ("FDIC") its receiver pursuant to sections 81-9-11 and 81-9-17 of the Mississippi Code.  That same day, the FDIC, as receiver, entered into a Purchase and Assumption Agreement ("P&A Agreement") with Trustmark, under which the FDIC transferred certain Heritage assets, including the subject loans and properties, and liabilities to Trustmark.

  On December 8, 2011, the Hinds County Circuit Court entered an order substituting the FDIC for Heritage as a defendant.  The FDIC then removed the case to this Court under 12

U.S.C. § 1819(b)(2)(B). The FDIC moved to dismiss [8], and Plaintiffs sought [10] and were granted leave to amend. Plaintiffs' Second Amended Complaint [15] added Trustmark as a defendant and asserted the following claims against it as assignee of Heritage's liabilities: breach of the duty of good faith and fair dealing; fraud and/or grossly negligent representation in the inducement; breach of fiduciary duties; negligence; wrongful foreclosure; and breach of contract and tortious breach of contract.

After Plaintiffs filed their Second Amended Complaint, the FDIC renewed its Motion to Dismiss [17]. The FDIC argued that Plaintiffs' claims against it were based entirely on alleged agreements with Heritage that did not satisfy the elements of 12 U.S.C. § 1823(e). The Court granted the FDIC's Motion on March 18, 2013. Order [66].

Once added as a party, Trustmark filed a counterclaim against Plaintiffs and a third-party claim against Mrs. Collins. Am. Answer, Countercl., & 3d Party Compl. [28]. Trustmark alleges that Plaintiffs and Mrs. Collins remain in default under the notes and guaranties, owing $445,378.62 in principal, interest, and late charges as of August 7, 2015. Francis Aff. [127-6] ¶ 8. Trustmark further seeks reimbursement totaling $150,886.61 for its costs and expenses in connection with collection and enforcement of the loan documents and guaranties. Buffington Aff. [127-7] ¶ 5.

Following the close of discovery, Trustmark filed the instant Motion for Summary Judgment [127]. Trustmark asserts that Plaintiffs' claims against it, like the claims against the FDIC, are barred by 12 U.S.C. § 1823(e) and the *D'Oench Duhme* Doctrine.[1] Trustmark also

---

[1]The broad framework of § 1823(e) substantially codifies parts of the federal common-law *D'Oench Duhme* Doctrine, and much of the legal framework for the two is the same. *FDIC v. McFarland*, 33 F.3d 532, 536 (5th Cir. 1994); *see also D'Oench, Duhme & Co. v. FDIC*, 315

claims it is entitled to summary judgment on its counterclaims and third-party claims against C&C and the Collinses. The Court has personal and subject-matter jurisdiction and is prepared to rule.[2]

II.     Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). When such contradictory facts exist, the court may "not make

---

U.S. 447 (1942).

[2]Despite the dismissal of the FDIC, the Court maintains original federal-question jurisdiction over the case. *See Adair v. Lease Partners, Inc.*, 587 F.3d 238, 244 (5th Cir. 2009) (explaining that courts "recognize continued federal jurisdiction when the FDIC removes a case but is later dismissed, and that this jurisdiction is pursuant to 12 U.S.C. § 1819 and not any other statute") (emphasis omitted).

credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments do not constitute an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993) (per curiam).

III.   Analysis

    A.   Plaintiffs' Claims against Trustmark

Trustmark asserts that, as a third-party purchaser of Heritage's assets, it is entitled to invoke the *D'Oench Duhme* Doctrine and 12 U.S.C. § 1823(e) as a defense to Plaintiffs' claims. Section 1823(e) provides:

> No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement—
>
> (A) is in writing,
>
> (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
>
> (D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e)(1). "[A]ny agreement which does not meet the requirements set forth in section 1823(e) of this title shall not form the basis of, or substantially comprise, a claim against the receiver or the [FDIC]." 12 U.S.C. § 1821(d)(9)(A). The *D'Oench Duhme* Doctrine

likewise bars a party from relying on an oral agreement between a failed bank and its customer "as the basis for defenses" to claims brought by the FDIC. *Lemaire v. FDIC*, 20 F.3d 654, 657 (5th Cir. 1994).

Significantly, the Fifth Circuit has extended the protection the *D'Oench Duhme* Doctrine affords to third-party purchasers of an insolvent's bank assets, such as Trustmark. *Porras v. Petroplex Sav. Ass'n*, 903 F.2d 379, 381 (5th Cir. 1990); *Bell & Murphy & Assoc., Inc. v. Interfirst Bank Gateway, N.A.*, 894 F.2d 750, 754–55 (5th Cir. 1990). Under these authorities, Trustmark is entitled to the protections of *D'Oench Duhme* and § 1823(e).

For their part, Plaintiffs do not argue with the legal framework Trustmark has presented. Instead, they first assert—without relevant legal authority—that Trustmark "affirmatively waived" the *D'Oench Duhme* and § 1823(e) defense via a provision in the P&A Agreement. Pls.' Mem. [131] at 5. Specifically, Plaintiffs point to Section 2.1(n) of that agreement, which provides:

> The Assuming Institution expressly assumes at Book Value (subject to adjustment pursuant to Article VIII) and agrees to pay, perform and discharge, all of the following liabilities of the Failed Bank as of the Bank Closing Date, except as otherwise provided in this Agreement (such liabilities referred to as "**Liabilities Assumed**"):
>
> . . .
>
> (n) all asset-related offensive litigation liabilities and all asset-related defensive litigation liabilities, but only to the extent such liabilities relate to assets subject to a Shared-Loss Agreement, and provided that all other defensive litigation and any class actions with respect to credit card business are retained by the Receiver.

P&A Agreement Excerpts [130-1; 130-2].

"A waiver is 'the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary intentional relinquishment of a known right.'" *Charter Oak Fire Ins. Co. v. B.J. Enters. of Miss., LLC*, 156 So. 3d 357, 361 (Miss. Ct. App. 2014) (quoting *Bellemere v. Geico Gen. Ins. Co.*, 977 So. 2d 363, 369 (Miss. Ct. App. 2007)). "To establish a waiver, there must be shown an act or omission on the part of the one charged with the waiver fairly evidencing an intention permanently to surrender the right alleged to have been waived." *Titan Indem. Co. v. Hood*, 895 So. 2d 138, 150–51 (Miss. 2004). Finally, "the fact of waiver typically must be proved by clear and convincing evidence." *Moorman v. Tower Mgmt. Co.*, 451 F. Supp. 2d 846, 853 (S.D. Miss. 2006). The Court concludes that Plaintiffs' waiver argument fails as a matter of law.

First, nothing in Section 2.1(n) references *D'Oench Duhme*, § 1823(e), or any other potential affirmative defenses that are being waived. Section 2.1(n) provides a mechanism whereby Trustmark stepped into the FDIC's shoes as to assumed liabilities. This does not mean it agreed to waive defenses as to these liabilities. Simply put, Section 2.1(n) does not "fairly evidenc[e] an intention permanently to surrender" any affirmative defenses. *Titan Indem. Co.*, 895 So. 2d at 150. And under Fifth Circuit law, Trustmark acquired the FDIC's *D'Oench Duhme* and § 1823(e) defense to any claims based on an alleged oral agreement.

Moreover, Section 2.1(n) is limited by the phrase "except as otherwise provided in this Agreement," and while no party has submitted the entire P&A Agreement to the Court, Trustmark attached Section 13.10 to its Rebuttal. That section provides:

> Except as otherwise specifically provided in this Agreement, nothing expressed or referred to in this Agreement is intended or shall be construed to give any Person other than the Receiver, the Corporation and the Assuming Institution any legal or equitable right, remedy or claim under or with respect to this Agreement or any

7

>provisions contained herein, it being the intention of the parties hereto that this Agreement, the obligations and statements of responsibilities hereunder, and all other conditions and provisions hereof are for the sole and exclusive benefit of the Receiver, the Corporation and the Assuming Institution and for the benefit of no other Person.

P&A Agreement Excerpt [133-1].  This provision evidences the parties' clear intent that the P&A agreement should not inure to the benefit of any third parties.  Plaintiffs "cannot overcome the application of the longstanding *D'Oench[] Duhme* doctrine by relying on contractual language which [Trustmark] and the FDIC never intended to benefit [them]."  *Owen v. Bank of the Ozarks*, 764 S.E.2d 893, 895 (Ga. Ct. App. 2014).  Plaintiffs have not established that Trustmark waived the protection of the *D'Oench Duhme* Doctrine and § 1823(e) through Section 2.1(n) of the P&A Agreement.

Plaintiffs next argue that Trustmark waived the defense "by being dilatory in raising [it]."  Pls.' Mem. [131] at 8.  There is no dispute that Trustmark raised its § 1823(e) defense in its Amended Answer.  Am. Answer [133] at 6.  But according to Plaintiffs, Trustmark should have pursued the defense in a motion under Rule 12(b) in 2012, when the FDIC sought and obtained dismissal of the claims against it.

Plaintiffs cite no authority that an affirmative defense, once properly raised in an answer, is waived if not pursued before the close of discovery.  In fact, the authority is to the contrary.  Waiver does not apply even when an affirmative defense is omitted from the answer, if it is "raised at a pragmatically sufficient time, and [if the plaintiff] was not prejudiced in its ability to respond."  *Dey v. State Farm Mut. Auto. Ins. Co.*, 789 F.3d 629, 635 (5th Cir. 2015) (alteration in original); *see also Bradberry v. Jefferson Cnty., Tex.*, 732 F.3d 540, 553 (5th Cir. 2013).

In the present case, Trustmark initially pleaded the defense in its Answer; discovery was required, at least as to portions of Trustmark's motion, before a Rule 56 motion could be filed; a lengthy stay contributed to the delay; Trustmark filed its motion within the deadline for dispositive motions; and Plaintiffs have not shown prejudice to their ability to respond. *See Bryant v. Wyeth, Inc.*, 816 F. Supp. 2d 329, 332–33 (S.D. Miss. 2011) (holding that affirmative defense that was raised in answer and pursued by way of a motion for summary judgment filed after defendant engaged in discovery relevant to defense was not waived). Trustmark filed the motion at a pragmatically sufficient time; it did not waive the defense.

Finally, Plaintiffs argue that even if Trustmark may assert the *D'Oench Duhme* and § 1823(e) defense, there is a genuine issue of material fact whether the agreement between C&C and Heritage was in writing. To support their position, Plaintiffs point to the deposition testimony of David Broadaway, the Rankin County division president for Heritage:

> Q. I know before we took the break, we were discussing or I was asking you some questions about how much Heritage Banking Group would agree to advance Mr. Collins in each instance when he purchased the ORE from the bank. I'm trying to be—I'm trying to make sure that I fully understand what the agreement was. But I guess my first question is was there—was this a written agreement with Mr. Collins?
>
> A. No.
>
> Q. So there was nothing in writing anywhere describing how this worked.
>
> A. There may have been—well, I would have had to have gotten—and I can't remember whether it was an e-mail or something from Tim Leitaker saying it was okay for me to do that. This was actually Tim's idea for me to do this.
>
> . . .
>
> Q. And there was nothing in writing other than you said you do think you got an e-mail or something from Tim Leitaker or somebody that said in essence let's go

9

>with this with Glen Collins, make those loans in the manner in which I just described, correct?
>
>A. I don't remember the exact communication, but, yeah, I was—that was communicated with me and I'm almost positive it was—well, yeah, I guess I'm positive that it was communicated in writing. If not, it still had to be signed off on every time I turned a loan in for it.

Broadaway Dep. [130-4] at 41, 55.

Plaintiffs' argument ignores the language of § 1823(e), which requires that the agreement itself—not simply communications about the agreement—be in writing and be executed by both the depository institution—Heritage—"and any person claiming an adverse interest thereunder, including the obligor"—C&C. 12 U.S.C. § 1823(e)(1)(A) & (B). Plaintiffs do not suggest that C&C executed the referenced communication. Nor do Plaintiffs have any proof establishing the other elements of § 1823(e). *See* Order [66] at 5 n.2.[3]

In short, Plaintiffs' alleged unwritten agreement with Heritage—upon which all of their claims are based—does not satisfy the elements of § 1823(e). As such, their claims are barred by *D'Oench Duhme* and § 1823(e). Trustmark's Motion is granted as to Plaintiffs' claims against it.

B.   Trustmark's Claims against C&C and the Collinses

Trustmark has also moved for summary judgment on its counterclaims and third-party claims for breach of contract and a deficiency judgment. Def.'s Mem. [128] at 11.[4] C&C and

---

[3]Plaintiffs' argument has another potential problem. Generally, a summary-judgment response must be in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2). The cited testimony violates the best-evidence rule. *See* Fed. R. Evid. 1002. But Trustmark did not object on this basis. *See* Fed. R. Civ. P. 56(c)(2) (allowing opposite party to object).

[4]Trustmark did not ask for summary judgment on its counterclaims for conversion and an accounting.

the Collinses do not dispute "that the Notes are in default," nor do they claim that the Collinses have not defaulted on the guaranties. Pls.' Mem. [131] at 14. C&C and the Collinses do, however, submit that they have "real defenses of Fraud and Misrepresentation" that defeat Trustmark's claims. They then reassert their arguments regarding § 1823(e). But these arguments fail for the reasons stated above. And because Trustmark has established the existence of valid contracts, breaches thereof, and resultant damages, Trustmark is entitled to summary judgment on the breach-of-contract claims.

As to damages, Trustmark has presented unrebutted evidence that shows a post-foreclosure deficiency, as of August 7, 2015, of $445,378.62 in principal, interest, and late charges, plus $57.94 per diem after August 7, 2015. Francis Aff. [127-6] ¶ 8. Absent contradiction in the record, these averments are deemed established. *See* Fed. R. Civ. P. 56(e). Trustmark is entitled to a deficiency judgment against C&C and the Collinses.

In addition, the guaranties the Collinses signed provided that the guarantor "will pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty in any litigation or bankruptcy or insolvency proceedings." C. Collins Dep. [127-3], Ex. 1 at ¶ 5; *see also id.*, Ex. 5 ¶ 11 ("On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Guaranty or any other document relating to the Debt. To the extent permitted by law, expenses include, but are not limited to, reasonable attorneys' fees, court costs and other legal

expenses.").[5]  The notes executed by C&C contain similar provisions.  *See* C&C Dep. [127-1] at Exs. 2–11.

Trustmark has submitted unrebutted evidence that, as of August 1, 2015, it had incurred $150,886.61 in legal and collection expenses and attorneys' fees in attempting to collect the debts.  Absent any evidence or argument to the contrary, the Court finds that the attorneys' fees requested are reasonable, considering the factors set forth in Mississippi Rule of Professional Conduct 1.5.  *See Mauck v. Columbus Hotel Co.*, 741 So. 2d 259, 269 (Miss. 1999); *see also* Fed. R. Civ. P. 56(e).  Trustmark is entitled to recover these fees and expenses from C&C and the Collinses.

IV.   Conclusion

The Court has considered all of the parties' arguments.  Those not specifically addressed would not have changed the outcome.  For the foregoing reasons, Defendant's Motion for Summary Judgment [127] is granted, Plaintiffs' claims are dismissed with prejudice, and Trustmark is entitled to judgment in its favor on its counterclaims and third-party claims for breach of contract.  Trustmark is awarded a deficiency judgment against C&C and the Collinses in the amount of $445,378.62 in principal, interest, and late charges, plus $57.94 per diem after August 7, 2015, and an award of legal expenses and attorneys' fees in the amount of $150,886.61.

Trustmark is directed to docket a notice, within seven (7) days of the entry of this order, indicating whether it intends to separately pursue its counterclaims for conversion and an

---

[5]It appears that, over the course of the Collinses' relationship with Heritage, two separate guaranty forms were used.  Both contain similar language regarding the guarantor's obligation to pay collection expenses and attorneys' fees.

accounting or whether a final judgment may now be entered in accordance with Federal Rule of Civil Procedure 58.

      **SO ORDERED AND ADJUDGED** this the 9th day of February, 2016.

                                      s/ *Daniel P. Jordan III*
                                      UNITED STATES DISTRICT JUDGE